UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:17CV00009-GCM

| | | |
|---|---|---|
| **LINDA FAYE WILDER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **NANCY A. BERRYHILL, Acting Commissioner** | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.   Administrative History**

Plaintiff applied for disability insurance benefits and supplementary security income under titles II and XVI of the Social Security Act on February 25 and March 12, 2013, respectively. (Tr. 188, 195). In both claims, she alleged disability beginning on May 26, 2010. (Tr. 188, 195). Plaintiff's claims were denied initially on May 20, 2013 (Tr. 111, 1117), and upon reconsideration on September 30, 2013

(Tr. 127, 135). On October 28, 2013, Plaintiff requested a hearing before an administrative law judge (ALJ) (Tr. 145). The hearing was held on April 10, 2015. (Tr. 32). Plaintiff, who was represented by counsel, appeared and testified at the hearing, as did a vocational expert (Tr. 32-70). During the hearing, Plaintiff amended her alleged onset date to January 1, 2013, because she "drew unemployment over [an] extended period of time up into 2012," and wished to avoid "the complexities that raises." (Tr. 38). On June 11, 2015, the ALJ issued a written decision denying Plaintiff's claims on the basis that she was not disabled within the meaning of the Act. (Tr. 18-27).[1] On August 10, 2015, Plaintiff requested that the Appeals Council review the ALJ's decision. (Tr. 12). The Appeals Council denied Plaintiff's request on November 15, 2016 (Tr. 1), making the ALJ's decision the final decision of the Defendant. Thereafter, Plaintiff timely filed this action.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

---

[1] In the ALJ's decision, the ALJ noted that Plaintiff's amendment of her alleged onset date from May 26, 2010, to January 1, 2013, was moot because the ALJ concluded that Plaintiff was not disabled throughout the period from May 26, 2010, through June 11, 2015, the date of the ALJ's decision. (Tr. 18).

2

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, *supra*. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays v. Sullivan*, *supra*.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. The undersigned finds that it is.

**B.     Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1)  Whether the claimant is engaged in substantial gainful activity;

(2)  Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3)  Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)  Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5)  Whether the claimant is able to do any other work, considering his RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v). In this case, the Commissioner determined Plaintiff's claim at the fourth step of the sequential evaluation process.

## C. The Administrative Decision

The ALJ applied the sequential evaluation process in this case. At step one, the ALJ found that Plaintiff engaged in substantial gainful activity in 2010. (Tr. 20). At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, hypertension, degenerative joint disease of the lumbar spine, and moderate left lumbar scoliosis. (Tr. 18). At step three of the sequential analysis, however, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment. (Tr. 22). The ALJ expressly found that Plaintiff's degenerative disc disease did not meet or medically equal the requirements of Listing 1.04, for spinal disorders. (Tr. 22).

Before turning to the fourth step of the sequential evaluation process, the ALJ assessed Plaintiff's RFC and found that she could perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), with additional exertional, postural, and environmental limitations. (Tr. 25). Based on this assessment, the ALJ determined at step four that Plaintiff was capable of performing her past relevant work as a general clerk or retail store manager. (Tr. 25).

Alternatively, at step five of the sequential analysis, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform other work existing in the national economy. (Tr. 25-26). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act at

any time from May 26, 2010, through June 11, 2015, the date of the ALJ's decision (Tr. 26-27).

## D. Discussion

### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error: (1) whether the ALJ's failure to conduct a proper function-by-function analysis of Ms. Wilder's impairments, and provide a logical bridge between the evidence and his conclusions regarding Ms. Wilder's credibility and RFC is harmful error, and (2) whether the ALJ's failure to properly analyze Ms. Wilder's claim under Listing 1.04A is harmful error. Plaintiff's assignments of error will be discussed seriatim.

### 2. First Assignment of Error

Plaintiff argues that the ALJ erroneously assessed her RFC. A claimant's RFC is "an assessment of an individual's ability to do sustained work- related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (1996). It represents the most, not the least, a claimant can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, at *2. The RFC assessment is based on "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). In assessing RFC, the adjudicator must consider only limitations

and restrictions attributable to medically determinable impairments, i.e., those which are demonstrable by objective medical evidence. SSR 96-8p, at *2. If the evidence does not show a limitation or restriction of a specific functional capacity, the adjudicator should consider the claimant to have no limitation with respect to that functional capacity. *Id*. at *3. At the administrative hearing level of review, the ALJ is exclusively responsible for determining an individual's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c).

Importantly, although the ALJ is responsible for assessing a claimant's RFC, the claimant has the burden of proving her RFC by showing how her impairments affect her functioning. *Greer v. Colvin*, No. 1:16-CV-397-DSC, 2017 WL 3090275, at *2 (W.D.N.C. July 20, 2017) (citing 20 C.F.R. §§ 404.1512(c), 416.912(c)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); *Plummer v. Astrue*, No. 5:11- CV-6, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing *Stormo*), adopted, 2012 WL 1858844 (May 22, 2012), *aff'd*, 487 Fed. App'x 795 (4th Cir. Nov. 6, 2012)).

In support of Plaintiff's argument that the ALJ erroneously determined her RFC, Plaintiff first contends that the ALJ erroneously considered the credibility of her subjective allegations of total disability. An important indication of the credibility of a claimant's statements is their consistency, both internally and with other information in the record. SSR 96- 7p, 1996 WL 374186, at *5-6 (1996); 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). If a claimant's statements lack consistency, an ALJ should give them little weight. *See id.* An ALJ's credibility determination is entitled to great deference. *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984).

Here, the ALJ properly determined that Plaintiff's allegations of totally disabling symptoms were not entirely credible because they were inconsistent internally and with other evidence. (Tr. 20-21, 23-25). Specifically, the ALJ noted that although Plaintiff testified that she stopped working in May 2010, her total earnings for 2010, which were approximately the same as her total earnings from 2001 through 2009 for full years of work, suggested that she continued to work throughout 2010. (Tr. 20; *see also* Tr. 35, 203). The ALJ also noted that Plaintiff's earnings record shows $9,173.00 in earnings in 2012. (Tr. 21; *see also* Tr. 203). While Plaintiff herself did not acknowledge this activity when questioned by the ALJ, Plaintiff's attorney stated that these earnings were attributable to Plaintiff's attempt to start her own business in 2012. (Tr. 21; *see also* Tr. 35, 39). The ALJ

further noted that Plaintiff reported working "full time and 40 to 50 hours per week," during a March 2015 appointment at Binder Chiropractic, which the ALJ appropriately found "severely weakens her overall credibility." (Tr. 21; *see also* Tr. 360). The ALJ appropriately considered Plaintiff's inconsistent statements regarding her work activity, including her contemporaneous report to a healthcare provider that she was working "full time and 40 to 50 hours per week," during the period she alleges she was disabled and unable to work.

The ALJ also properly found that Plaintiff's allegations of totally disabling pain and limitation were not fully credible because they were inconsistent with the treatment notes in the record, which documented intermittent reports of back pain, generally normal physical examination findings, conservative treatment, and improvement in response to treatment. (Tr. 23- 25).

Plaintiff contends that the ALJ "made only two general statements in support of his credibility findings." (Pl.'s Mem. 8). A review of the ALJ's written decision demonstrates that this contention is factually incorrect. The ALJ thoroughly discussed the evidence of record in relation to Plaintiff's complaints of pain, and appropriately identified several inconsistencies between Plaintiff's subjective allegations and other evidence.

Plaintiff also contends that the ALJ "mischaracterized" Plaintiff's report in March 2015 that she was working full time, from 40 to 50 hours a week. (Pl.'s

9

Mem. 8). Plaintiff speculates that because this information was written in the "Family and Social History" section of the treatment note, it might have referred to Plaintiff's functioning prior to January 1, 2013, her amended alleged disability onset date. (Pl.'s Mem. 8). However, there is no record support for this speculation. Additionally, in the same section of the form, the doctor also noted that Plaintiff reported that she exercised two to three times a week, did not drink alcohol or smoke cigarettes, and that she was not taking prescription medications. (Tr. 360). Nothing suggests that these findings referred specifically to the time before January 1, 2013, or why Plaintiff's doctors would have been focused on her functioning more than two years before her appointment on that date, when she complained of back pain lasting only "for the past few weeks," which was relieved with over-the-counter medication. (Tr. 360).

Plaintiff does not address the ALJ's other reasons for discounting her credibility—her conservative treatment, the intermittent nature of her complaints, her immediate improvement following treatment from March 2015 to April 2015, the generally normal examination findings of record, or other factors. By ignoring the ALJ's reasons for discounting Plaintiff's credibility, as well as the evidence underlying those reasons, Plaintiff necessarily fails to show any error by the ALJ.

Plaintiff next objects to the ALJ's statement that her amendment of her alleged disability onset date was moot, and contends that the ALJ committed

harmful error by considering evidence prior to her amended, alleged onset date. However, Plaintiff cites no authority supporting her contention that the ALJ's discussion of treatment notes pre-dating her amended, alleged onset date constitutes error, let alone harmful error. The ALJ explained that Plaintiff's amendment of her alleged disability onset date from May 26, 2010, to January 1, 2013, was moot (that is, the change did not alter the ALJ's decision) because the ALJ determined that "the claimant has not been disabled at any point in time from her initial alleged onset date through the date of this decision." (Tr. 18). While the ALJ did summarize treatment notes from 2012 in the written decision (Tr. 23), the ALJ focused on evidence dated after January 1, 2013. (Tr. 21-25). Furthermore, as the ALJ's discussion of the evidence reveals, Plaintiff's complaints of back pain were intermittent, generally mild in nature, and improved with medication during 2012 and in 2013 and subsequent years. (Tr. 21-25).

Significantly, Plaintiff does not argue that she suffered from any decline in functioning on January 1, 2013. Rather, Plaintiff explained at the hearing, she amended her alleged onset date because she was receiving unemployment insurance benefits throughout 2012. (Tr. 38). Plaintiff argues now that her amended, alleged onset date coincides with a worsening of subsequent worsening of her condition, but even Plaintiff does not point to any alleged decline until two flare-ups of symptoms in April 2013 and March 2014. Under these circumstances,

Plaintiff fails to show that the ALJ's discussion of treatment notes pre-dating her amended, alleged onset date constitutes error, let alone prejudicial error requiring remand.

Plaintiff next complains that the ALJ mischaracterized Dr. Charles E. Suber's March 11, 2015 assessment that Plaintiff was "in good health and is expected to make good progress and recovery with few residuals." (Pl.'s Mem. 12; Tr. 24; *see also* Tr. 362). Plaintiff notes that Dr. Suber also wrote that it was "reasonable to believe that her recovery may take longer than an average patient with an uncomplicated case." (Pl.'s Mem. 12; *see also* Tr. 362). However, Dr. Suber's finding that Plaintiff was in good health is supported by Plaintiff's contemporaneous report, discussed above, that she was working "full time and 40 to 50 hours per week," and that she was exercising a few times a week. (Tr. 360). In addition, Plaintiff ignores that Dr. Suber noted that Plaintiff's complaints reflected a short duration of pain lasting only a few weeks, and that he expected Plaintiff to improve significantly within only "3-4 weeks of treatment." (Tr. 363). Plaintiff also ignores the ALJ's observation that, while Plaintiff complained of "8/10" pain on this occasion on March 11, 2015, she reported that her pain was a "6/10" just a few days later on March 16, 2015 (Tr. 24; *see also* Tr. 356), and, by April 2, 2015, rated her pain as only a "3/10" (Tr. 24; *see also* Tr. 352). Plaintiff fails to show that the ALJ mischaracterized Dr. Suber's opinion that Plaintiff was

"in good health and is expected to make good progress with few residuals." Dr. Suber's notes confirm his opinion, and reflect an almost immediate reduction of Plaintiff's reported pain with treatment.

Separately, Plaintiff complains that the ALJ did not discuss "Dr. Suber's mention of a Low Back Disability Questionnaire . . . rendering a score or percentage of 70 which demonstrated functional deficits or disability." (Pl.'s Mem. 12; *see also* Tr. 361). It is well-established, however, that an ALJ "is not tasked with the impossible burden of mentioning every piece of evidence that may be placed into the Administrative Record," and "is not required to discuss every finding in every medical report." *Courtney v. Colvin*, No. 2:12-CV-73-MR-DLH, 2014 WL 1882583, at *7 (W.D.N.C. May 12, 2014) (internal quotations and citations omitted). Here, the ALJ discussed Dr. Suber's treatment notes and reasonably concluded that they supported a determination that Plaintiff was not disabled. (Tr. 24). Moreover, Dr. Suber stated that the questionnaire was "completed by the patient." (Tr. 361). As explained above, the ALJ properly concluded that Plaintiff's complaints were not entirely credible, and he was therefore not required to accept them as true. The discrepancy between Plaintiff's questionnaire responses and Dr. Suber's opinion, cited by the ALJ, further supports the ALJ's decision. Contrary to Plaintiff's allegations of permanent and totally disabling pain and other symptoms, Dr. Suber opined that Plaintiff was in "good

13

health" and that her complaints of pain would resolve quickly with "few residuals." (Tr. 362). The Court finds that the ALJ properly considered Dr. Suber's treatment notes.

Next, Plaintiff objects to the ALJ's consideration of normal physical examination findings from Neurology Associates, P.A. (Pl.'s Mem. 12; Tr. 24; *see also* Tr. 336-343). Plaintiff appears to suggest that these findings are irrelevant because "the ALJ fails to note that [Plaintiff] presented to this office for evaluation of [carpal tunnel syndrome]." (Pl.'s Mem. 12). But this assertion is factually incorrect. The ALJ acknowledged that Plaintiff sought treatment from Neurology Associates for evaluation of carpal tunnel syndrome. (Tr. 21). However, the ALJ also properly considered the physical examination findings from this provider. (Tr. 24). While Plaintiff was treated specifically for carpal tunnel syndrome, the physical examination findings made by Neurology Associates are among the most detailed in the record, and include evaluations of Plaintiff's general appearance, neck, gait, motor strength, sensation, reflexes, arms and legs, skin, neurological functioning, and psychiatric functioning. (Tr. 336-343). These examinations reveal entirely normal findings. (Tr. 336-343).

Finally, Plaintiff objects to the ALJ's consideration of Dr. Sandhu's opinion in assessing her RFC. (Pl.'s Mem. 12-13; *see also* Tr. 104-106). According to Plaintiff, the ALJ was not allowed to consider Dr. Sandhu's opinion because it was

offered on September 24, 2013, and does not account for the evidence dated after his opinion. This objection is unpersuasive. Plaintiff alleges that she became totally disabled and unable to work on January 1, 2013. (Tr. 18). Dr. Sandhu evaluated Plaintiff's functioning on September 24, 2013, during the relevant period when she alleges she was disabled. (Tr. 104-106). Furthermore, "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims." SSR 96-6p, 1996 WL 374180, at *2 (1996). The ALJ gave only partial weight to Dr. Sandhu's opinion, explaining that it was generally consistent with the objective medical evidence of record. (Tr. 25). However, considering the evidence as a whole, including the combined effect of Plaintiff's impairments, the ALJ found that Plaintiff was more limited than Dr. Sandhu opined. (Tr. 25). Under these circumstances, Plaintiff fails to show any error by the ALJ.

### 3. Second Assignment of Error

In his analysis at step three the ALJ determined that none of Ms. Wilder's severe impairments meet or equal a listing, which was consistent with the findings of the state agency consultants. (Tr. 22). Ms. Wilder argues that the ALJ erred in failing to evaluate whether her impairments met listing 1.04(A).

The ALJ is required to "apply the requirements of the listing to the medical record" so that his opinion does not appear "devoid of reasoning" upon review.

*Fox v. Colvin*, 632 Fed. Appx. 750, 754 (4th Cir. 2015) (citing *Radford v. Colvin*, 734 F.3d 288, 291-92 (4th Cir. 2013). However, the ALJ's duty to identify relevant listed impairments and compare them to Plaintiff's symptoms is triggered only if there is "factual support in the record that the impairment meets such listing." *Brown v. Colvin*, No: 3:14-cv-00572- MOC, 2015 WL 5098420 at *5 (W.D.N.C., Aug. 31, 2015); *Cook v. Heckler*, 783 F.2d 1168, 1172(4th Cir. 1986). "Under *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is *only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments*." *Ketcher v. Apfel*, No. Civ. A. AW-98-3486, 68 F. Supp. 2d 629, 645 (D. Md. Aug. 27, 1999) (emphasis added). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id*. (citing *Russell v. Chater*, 60 F.3d 824, 1995 WL 417576, at *3 (4th Cir. 1995)).

Listing 1.04(A), addresses disorders of the spine, and provides that a person is presumptively disabled if the following conditions are demonstrated:

> Disorders of the spine …, resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, with: Evidence of [1] nerve root compression characterized by neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness or muscle weakness) [4] accompanied by sensory or reflex loss and, if there is involvement of

> the lower back, [5] positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P., § 1.04(A). With respect to the examination findings required by Listing 1.04, the regulations emphasize that "[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." *Id*. at § 1.00(D).

Here, the ALJ determined that "[t]he claimant's impairments do not manifest the signs, symptoms, and findings required to meet or medically equal any of the physical listings." (Tr. 22). The ALJ explained that "[t]his finding is consistent with that of the State agency medical consultants who found that no listing was met or equaled, and no medical evidence has been submitted at the hearing level that would alter this conclusion." *Id*. With respect to Listing 1.04, the ALJ explained that, "[s]pecifically, the claimant's degenerative joint disease does not manifest the signs, symptoms, and findings required to meet or medically equal listing 1.04," and that "[t]he undersigned has considered the application of *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013)." *Id*. Finally, the ALJ stated that, "[a]s required under [SSR] 02-1p, the claimant's obesity was considered when making this finding." *Id*. The ALJ provided additional support for his determination that Plaintiff's impairments did not satisfy Listing 1.04 in the context of discussing the medical evidence in subsequent portions of the ALJ's decision, where the ALJ cited the results of multiple examinations in 2013 and 2014 showing that Plaintiff

17

had normal motor functioning, normal sensation, normal reflexes, and negative straight-leg raising tests. (Tr. 24).

While Plaintiff points to evidence that she complained of pain (typically localized) and exhibited somewhat limited range of motion on examination, the overwhelming majority of the record reflects generally normal objective examination findings indicating no motor loss, no sensory loss, no reflex loss, and negative straight-leg raising tests. Indeed, even the evidence Plaintiff cites (typically selected from treatment notes immediately following a temporary exacerbation of Plaintiff's symptoms) tends to show that Plaintiff's impairments did not satisfy the requirements of Listing 1.04(A). The examination Plaintiff cites on April 9, 2013, for example, showed that Plaintiff had no motor loss. (Tr. 296). On the contrary, Plaintiff had normal muscle function, bulk, and contour. *Id*. Plaintiff also had normal sensation. *Id*. Plaintiff had only "localized" low back pain after a fall two weeks prior, and a straight-leg raising test was negative. *Id*. The examination Plaintiff cites on March 12, 2014, yielded essentially identical findings. Plaintiff had normal motor function, bulk, and contour; normal sensation; normal reflexes; and normal coordination. (Tr. 317). Plaintiff again had only localized low back pain, and a straight-leg raising test was once again negative. *Id*. Other examinations in the record, including examinations from Neurology

Associates, reveal similarly normal motor functioning, including normal muscle tone, bulk, and strength; normal sensation; and normal reflexes. (Tr. 336, 341-42).

In *Clark v. Berryhill*, No. 5:16-CV-52-GCM, 2017 WL 3687927 (W.D.N.C. Aug. 25, 2017), this court rejected a claimant's similar argument that the record contained "ample evidence" requiring the ALJ to provide a detailed analysis regarding Listing 1.04(A) where the record contained no evidence that a required element of the listing was met. The court reasoned that "Ms. Clark fails to present evidence that her symptoms meet the severity of *all* the listing criteria under paragraph A and 'an impairment that manifests only some of the listed criteria, no matter how severely, does not qualify.'" *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Likewise, in this case, the Court finds that the ALJ did not err in failing to identify relevant listed impairments and compare them to Plaintiff's symptoms.

IT IS THEREFORE ORDERED that

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) the Plaintiff's Motion for Summary Judgment is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment is **GRANTED**; and

(4)     this action is **DISMISSED**.

Signed: February 21, 2018

*[signature]*

Graham C. Mullen
United States District Judge